## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| A.R., | : | |
| | : | **Case No. 2:21-cv-04935** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **WYNDHAM HOTELS &** | : | |
| **RESORTS, INC.**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant Wyndham Hotels & Resorts, Inc.'s (hereinafter "Wyndham") Motion to Dismiss. (ECF No. 30). For the following reasons, Defendant's Motion to Dismiss is hereby **DENIED**.

## I.   BACKGROUND

Plaintiff, A.R., was trafficked for sex and held captive by means of "violence, threats, induced dependence on illegal substances, and induced dependance for "food, transportation, shelter, and clothing" beginning at twenty years old from 2009 through 2015. (ECF No. 1 at ¶¶ 33–34). She alleges that this trafficking took place at a Super 8 and Hawthorn Suites by Wyndham in Columbus, Ohio. (*Id.*, ¶ 38). Plaintiff now seeks to hold Defendant liable under the civil liability beneficiary theory of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). (*Id.*, ¶ 116). Plaintiff alleges that Defendant Wyndham knew or should have known A.R. was trafficked on its properties and had a statutory obligation not to benefit financially

from the venture. (*Id.*, ¶¶ 23, 53–54, 117). As a result, A.R. argues that she suffered "substantial physical and psychological injuries." (*Id.*, ¶ 119).

A.R. argues that Defendant "hewed to a common policy of harboring known and suspected human traffickers in exchange for financial benefit" and "actively ignoring signs of ongoing human trafficking." (*Id.*, ¶¶ 52–53). Plaintiff alleges the hotel staff at Wyndham's franchises should have recognized obvious signs of her trafficking in their hotels which included: (1) unusually large numbers of male guests asking for A.R. at the front desk; (2) constant foot traffic to A.R.'s room by "johns" who routinely entered the hotels as nonpaying guests and left within hours of arrival; (3) at least one of A.R.'s traffickers regularly requesting that hotel staff notify him when A.R. attempted to leave the hotels; (4) excessive requests for towels and linens; (5) unusually large numbers of used condoms in the garbage bins; (6) cash payment for rooms; and (7) obvious signs of illegal drug use. (*Id.* at ¶¶ 47–49). A.R. further alleges that she called the front desk of the Super 8 for help when her trafficker and a "john" got into a fight and a hotel employee arrived to break up the fight. (*Id.*, ¶ 44). A.R. attempted to flee the hotel during the altercation, but her trafficker caught her and forcibly returned her to the hotel without staff interference. (*Id.*). Finally, A.R. maintains that Defendant has long been on notice of repeated incidences of sex trafficking at their hotel locations but fails to provide examples of sex trafficking events at the Hawthorn Suites at issue in this action. (*Id.*, ¶ 75).

A.R.'s Complaint initially brought a conspiracy claim against all Defendants. (*Id.*, ¶ 121). Defendants G6 Hospitality, LLC, the Ohio Hotel and Lodging Association ("OHLA), and the American Hotel and Lodging Association ("AHLA") were voluntarily dismissed from this action between January and June 2022. (ECF Nos. 23, 42, 51). Plaintiff and Defendant Wyndham

stipulated to dismissal of the conspiracy claim (ECF No. 46) in April 2022, and this Court granted an order dismissing the claim. (ECF No. 47). Therefore, the TVPRA claim is the only remaining allegation at issue with Defendant in this Motion to Dismiss.

## II. STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible

when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finally, the Complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F. 3d 553, 557 (1st Cir. 2017).

### III. ANALYSIS

#### A.  Direct Civil Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in other cases with many factual similarities to this one.  *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020). Like the Plaintiffs in the other related cases, A.R. has sued under the TVPRA.

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or

> that the person has not attained the age of 18 years and will be caused to engage
> in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil

liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action
> against the perpetrator (or whoever knowingly benefits, financially or by receiving
> anything of value from participation in a venture which that person knew or should
> have known has engaged in an act in violation of this chapter) in an appropriate
> district court of the United States and may recover damages and reasonable
> attorneys fees.

18 U.S.C. § 1595(a).

This Court held in *M.A.* and *H.H.* that § 1595(a) can be a standalone claim, and civil

defendants need not have committed the underlying criminal sex trafficking offense under § 1591.

*M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190,

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-

457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ]

civil liability both for those who face criminal liability for their profiteering and those who do

not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept.

9, 2014) (explaining that the 2008 amendments broadened the parties who could be sued for

trafficking violations from only the perpetrator)). This Court likewise finds that A.R.'s allegation

that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim

of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 1, ¶ 11).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of

§ 1595(a), which requires: (1) the person or entity must "knowingly benefit[], financially or by

receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or

should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021). This Court will assess these factors in a different order than provided in the statute to allow for a more logical progression of legal analysis.

### *1. Knowing benefit*

This Court begins with an analysis of whether A.R. has sufficiently alleged that Defendant "knowingly benefited" financially from her sex traffickers' sex trafficking venture. The first element merely requires that Defendant knowingly receives a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *H.H.*, 2019 WL 6682152 at *2. *See also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). A.R. alleges that Defendant rented rooms to her traffickers and benefited financially. (ECF No. 1, ¶ 118). Therefore, Plaintiff pleads allegations sufficient to meet this element of the § 1595(a) standard.

*2. Knew or should have known the venture was engaged in trafficking*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Defendants need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)). This Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *Id.* at 968.

Defendant Wyndham argues that A.R.'s Complaint only alleges that Wyndham "could have known" not "knew or should have known" that sex trafficking was ongoing at the Super 8 and Hawthorn Suites in Columbus. (ECF No. 30 at 10). It alleges that its franchisor/franchisee relationship with the hotels removes it from liability because its connection to hotel staff is too attenuated to conclude that Defendant had constructive knowledge of A.R.'s abuse. (ECF No. 36 at 15). Even if Defendant had more control over hotel staff, it maintains that constructive knowledge under § 1595 requires something more than a generalized awareness "that sex trafficking sometimes occurred on their franchisees' properties." (*Id.* at 15–16 (citing *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020)). To adopt Plaintiff's proposed interpretation of the TVPRA, maintains Defendant, would result in "any industry whose goods and services are sometimes misused by criminal traffickers . . . deemed to have constructive knowledge of any specific instance of sex trafficking." (ECF No. 49 at 8). Defendant argues that Plaintiff must

allege that Wyndham, as a franchisor, had knowledge of "a specific trafficking venture" to be held liable under the TVPRA. (*Id.* at 9).

Plaintiff points to this Court's previous opinions to argue that "failure to combat a known problem in one's operations can rise to the level of negligence sufficient to establish constructive knowledge as required under § 1595 of the TVPRA." (ECF No. 48 at 8 (citing *M.A.*, 425 F. Supp. 3d at 968)). Plaintiff asserts that she pled sufficient facts to allege plausibly that hotel employees at these locations would have been aware of many red flags and instances of violence that pointed toward ongoing sex trafficking at their hotels. (*Id.* at 9). Even though Defendant was on notice of ongoing sex trafficking, Plaintiff maintains, Defendant continued to rent rooms and profit from trafficking while failing to prevent its occurrence. (*Id.* at 10).

As set forth in several of this Court's previous decisions, this Court is guided by two cases that represent opposite ends of the spectrum of the "knew or should have known" prong of the TVPRA. In *Ricchio v. McLean*, the plaintiff's allegations contained fairly strong evidence that the hotel owner and the trafficker were working together, and that the hotel owner intended to profit from the trafficking scheme. The allegations included a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to Ricchio's obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Ricchio alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557.

On the other end of the spectrum is *Hillary Lawson v. Howard Rubin*, where plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women then sexually assaulting and abusing them at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus would have done further investigation following the incidents, it would not have uncovered to any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at **13–14.

A.R.'s allegations do not rise to the level of obviousness present in *Ricchio*. First, Plaintiff argues that there were a number of red flags apparent to hotel staff at both hotels: (1) cash payments for rooms; (2) excessive requests for new linens and towels; (3) nonpaying "johns" asking for A.R. and regularly going into and out of her room; and (4) requests by her traffickers of staff to notify them when A.R. attempted to leave the hotels. (ECF Nos. 1, ¶¶ 47–49). Regarding the Super 8 in which A.R. alleges she was trafficked, A.R. argues that she once had to call hotel staff for help when her trafficker and a "john" who had purchased her for sexual activity got into a fight. (*Id.*, ¶ 44). After hotel staff arrived at her room, A.R. fled, but was later apprehended by her trafficker and forced back to the hotel. (*Id.*). Plaintiff makes no specific allegations about hotel staff's awareness of her trafficking at the Hawthorn Suites.

This Court finds A.R.'s allegations against both hotels insufficient to establish actual knowledge. She alleges that hotel staff were called to her room to break up a fight between her trafficker and a "john," but she does not allege facts to demonstrate that the hotel employee who

arrived was aware of the arrangement between the parties. As previously stated, she does not allege specific facts about the Hawthorn Suites at all.

This Court finds, however, that Defendant had constructive knowledge of the trafficking occurring at their hotels because they "should have known" about the nature of the venture under the beneficiary theory's negligence standard. 18 U.S.C. § 1595(a). A.R. alleges that Defendant franchisors was on notice about the prevalence of sex trafficking at its hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence. (ECF Nos. 1, ¶¶ 42–49, 52; 48 at 10). She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation. (ECF No. 1, ¶ 49). As such, Plaintiff argues that Defendant's failure to act resulted in a "common policy of actively ignoring signs of ongoing human trafficking." (*Id.*, ¶ 53).

Even though Defendant maintains that the individual hotel employee's actual or constructive knowledge of trafficking is insufficient to impute knowledge on Defendant as a franchisor (ECF Nos. 30 at 10–11; 49 at 8), Plaintiff's allegations are sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she alleges that the franchisor itself had constructive knowledge of the problem. Several courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. Mar. 26, 2009)

(finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"). Here A.R. alleged that Defendant was on notice about the prevalence of sex trafficking at its hotels and failed to take steps to train staff to prevent its occurrence. Therefore, this Court finds that A.R.'s Complaint sufficiently alleges negligence under § 1595 for purposes of surviving this Motion to Dismiss.

### 3. Participation in a venture

This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d at 288–89); *see also Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under the TVPRA does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at

968–69; *S.J.*, 473 F. Supp. 3d at 153–54; *Doe S.W.*, 2020 WL 1244192, \*6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at \*1 n. 1 (N.D. Cal. June 5, 2020).

This Court must decide whether Plaintiff alleged sufficient facts to demonstrate Defendant's conduct constituted "participation in venture" under § 1595(a). A.R. alleges that her traffickers had a sex trafficking venture. The question is whether the Defendant participated in a commercial venture related to A.R.'s trafficking by: (1) "own[ing], supervis[ing], and operat[ing]" the Super 8 and Hawthorn Suites; (2) receiving 10% of the hotels' gross revenue; (3) implementing brand standards; (4) giving hotels access to Wyndham's brand programs and reservation system; (5) and promulgating the "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees." (ECF Nos. 1, ¶¶ 56–67; 48 at 11).

First, Defendant Wyndham counters that the hotels are subject to franchise agreements meaning it "does not own, operate, manage, or supervise the facilities," nor was Defendant present at either hotel during the period Plaintiff alleges her trafficking occurred. (ECF No. 30 at 7). Defendant argues that the Complaint has not established "a continuous business relationship, . . . pattern of conduct, or a tacit agreement between" Wyndham and A.R.'s traffickers. (*Id.* at 8). In fact, Defendant contends, the Complaint does not involve allegations that Wyndham "hired anyone involved in sex trafficking, that it witnessed any sex trafficking, or that it interfered with any efforts to stop sex trafficking." (*Id.*)*.* Even if Plaintiff had made those allegations, Defendant maintains that franchise relationships simply provide intellectual property to hotel operators and is not evidence of "the association-in-fact" necessary to establish the existence of a TVPRA "venture." (ECF No. 49 at 6–7 (citing *Cisneros v. Petland, Inc.*, 872 F. 3d 1204, 1212 (11th Cir. 2020)).

Defendant relies on Eleventh Circuit's recent decision in *Doe #1 v. Red Roof Inns, Inc.*, in which the Court held that "participation in a common venture" under 18 U.S.C. § 1595's beneficiary theory should be defined, based on its common definition as "an undertaking or enterprise involving risk and potential profit." (ECF No. 30 (citing 21 F. 4th 714, 724 (11th Cir. 2021)). In *Doe #1*, Plaintiffs alleged that defendant hotel franchisors participated in "sex trafficking ventures." *Id.* at 726. The Complaint included allegations that: (1) defendants licensed their brand to franchisees who paid royalties to the defendants and other fees based on a percentage of their room revenue; (2) defendants received a percentage of the revenue generated from the rooms in which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at these hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and controlled training related to spotting trafficking; and (5) read online reviews mentioning prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Id.* While the court acknowledged that these allegations suggested that the franchisor defendants benefitted financially from renting rooms to traffickers, they did not rise to the level of showing that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* at 726–27. On appeal, Plaintiffs changed their theory and argued instead that "the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the [TVPRA]." *Id.* at 727. Because Plaintiffs did not reserve this theory for appeal and because they repeatedly referred to "sex trafficking ventures" in their pleadings, the court declined to address Plaintiffs' new "commercial venture" theory. *Id.*

The Eleventh Circuit's decision is not controlling here. *Doe #1* does not apply to the facts at hand. The court distinguished the "sex trafficking ventures" at issue in *Doe #1* from the plaintiff's "commercial venture" argument raised on appeal and chose not to address the plaintiff's commercial venture theory in that case. *Id.* at 727. Here, A.R. alleges that Defendant "participated in a commercial business venture under § 1595[] by receiving royalties from Plaintiff's traffickers renting rooms at their branded locations," and through their expansive control of other hotel policies and operations, not that Defendant participated in the sex trafficking ventures itself. (ECF Nos. 1, ¶¶56–67; 48 at 13). Defendant Wyndham's argument (ECF No. 58 at 6) that Plaintiff alleged that Defendant participated in "trafficking ventures" (ECF No. 1, ¶ 95) and "sex ventures" (*Id.*, ¶ 131) is misstated because both references appear in the Complaint under the context of Plaintiff's original conspiracy claim, which has since been dismissed. (ECF No. 47).

A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Despite the parties' differing allegations about Defendant's operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation. *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020). Construing these allegations in favor of the Plaintiff, as required at this stage, this Court finds that Plaintiff's allegations that Defendant substantially oversaw operations and promulgated policies for franchisee hotels meet § 1595's definition of "participation in a venture. Here, Defendant was involved in a business venture with the franchisee hotels, and both groups

14

benefitted by renting rooms to traffickers despite having constructive knowledge of ongoing trafficking based on the totality of the circumstances.

Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA. *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections).

### B. Joint and Several Liability

Plaintiff argues that all Defendants are jointly and severally liable for her damages under the TVPRA. (ECF No. 1, ¶ 30). Defendant Wyndham does not appear to respond to this argument. Therefore, this Court will consider Defendant to have conceded this point.

### C. Vicarious Liability

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. Although Plaintiff argues it is unnecessary to establish a theory of indirect liability as she has pled sufficient facts to establish Defendant's direct liability under the TVPRA, Plaintiff maintains that she sufficiently alleged that Defendant exerts a significant amount of control over the franchised locations under an agency and joint employer theory. (ECF No. 48 at 13). Specifically, she alleges that Defendant controls the "business, operations, training, management, supervision, administration, and procedures" of the local hotels and engages in profit sharing. (*Id.* at 14 (citing ECF No. 1, ¶¶ 56–67)).

The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts who have adjudicated this issue must apply common law to fill in the gaps. *Norfolk Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36 (1983) (explaining that the traditional rules of statutory construction advise that statutes are presumed not to disturb the common law "unless the language of the statute [is] clear and explicit for this purpose."); *see also In re Nicole Gas Prod., Ltd.*, 581 B.R. 843, 850 (B.A.P. 6th Cir. 2018), *aff'd sub nom. Nicole Gas Prod., Ltd.*, 916 F.3d 566 (6th Cir. 2019) (explaining that statutes are presumed to embrace the common law extant at their enactment). In the past, this Court, and other district courts, have applied the state common law of vicarious liability when addressing indirect liability arguments under the TVPRA. *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *see also A.B.*, 455 F. Supp. 3d at 194–95 (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law). Since this Court's ruling in 2019, another district court chose to apply the federal common law of vicarious liability in a TVPRA case. *A.B.*, 484 F. Supp. 3d at 939–40 (citing Ninth Circuit cases where the court applied the federal common law of agency where the federal statute did not otherwise provide direction).

Although it has yet to rule on whether the federal or state common law of vicarious liability should be applied under the TVPRA, when analyzing the few cases in which federal statutes do not provide direction on vicarious liability arguments, the Sixth Circuit has applied the federal common law of vicarious liability. *See e.g., Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974) (explaining that in determining the extent of liability of the owner of a real estate agency for violations of Fair Housing Act by his agent, court should apply federal law and should not be restricted by

16

respondeat superior law or law of vicarious liability of the various states); *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F. 3d 627, 635 (6th Cir. 2015) (explaining that a seller may be held vicariously liable in an action alleging violation of the Telephone Consumer Protection Act ("TCPA") under federal common law principles of agency) *but cf. Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 611 (6th Cir. 2018) (deciding to apply state common law to an ERISA contract dispute regarding successor liability because a federal court may take direction from "the law of the state in which it sits" so long as the standard used "best comports with the interests served by ERISA's regulatory scheme," but explaining that "as a general matter, the court must look to the federal common law and should draw guidance from state common law only when federal common law does not provide an established standard").

As set forth more fully below, the defining characteristics of agency and joint employer status are nearly identical under federal common law and Ohio common law. In *M.A.*, a similar, previous sex trafficking case alleging violations of the TVPRA, this Court applied the Ohio common law of vicarious liability. *M.A.*, 425 F. Supp. 3d. at 971–72. This decision stemmed from the fact that the limited references to the federal common law of vicarious liability drew directly from Ohio common law and Restatements. Even if the Sixth Circuit were to rule that federal common law should be applied to vicarious liability arguments under the TVPRA, it would not change this Court's following analysis because there is little to no substantive difference between federal and Ohio common law standards for agency and joint employer vicarious liability. Therefore, a review of the present matter under both federal and state common law results in the same outcome. Because the Sixth Circuit has not (nor has any other federal circuit) had the opportunity to address whether the federal common law or state common law of vicarious liability

should be applied to the TVPRA, for thoroughness, this Court will analyze the current matter under

both legal theories to determine whether Plaintiff meets the pleading standard for vicarious liability

under the TVPRA.

### 1. Agency and Vicarious Liability

Defendant Wyndham argues that a franchisor's obligations to a franchisee under the

Lanham Act, which "require[] supervision of trademark licensees" is meant to "ensure the integrity

of the registered trademarks, not create a federal law of agency." (ECF Nos. 30 at 18–19 (citing

*Oberlin v. Marlin Am. Corp.*, 596 F. 2d 1322, 1327–28 (7th Cir. 1979); 49 at 11–12). Defendant

explains that "[a]lthough franchise agreements typically impose detailed requirements on the

franchisee's operations [], the existence of these contractual requirements does not mean that

franchisors have a role in managing the day-to-day operations of their franchisees." (ECF No. 49

at 12) (quoting *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 338 (Wis. 2004)). Defendant

cites several recent court cases that dismissed agency theories advanced under the TVPRA against

hotel brand franchisors. (*Id.* (citing *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708

(E.D. Mich. 2020) (dismissing TVPRA claim based on agency because the plaintiff "failed to

plausibly allege" that the franchisor defendants had "'day-to-day' control" over and franchised

hotels); *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020) (dismissing the

TVPRA claim based on agency because the plaintiff's allegations, "even if proven true, would fail

to sufficiently demonstrate that the franchisor defendants exercised [] complete control over the

day-to-day operations of the franchisee's business")).

To the extent the federal system, and more specifically the Sixth Circuit, have created a

common law of agency liability, the courts generally turn to widely accepted definitions of agency

in building the federal common law in this space. In *Burlington Industries, Inc. v. Ellerth*, the Supreme Court defined the central principle of agency law within the employment context: "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." 524 U.S. 742, 755–56 (1998) (quoting Restatement (Second) of Agency § 219(1)). The Court explained that "[a]n employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment," but in some circumstances, agency principles "impose liability on employers even where employees commit torts outside the scope of employment." *Id.* at 756, 758.

It is a long-standing principle of law in Ohio that "[a] principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority." *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014) (citing *State ex rel. Nicodemus v. Indust. Comm'n*, 448 N.E.2d 1360, 1362 (Ohio 1983)). In determining whether there is an agency relationship, the question is how much the agent "retained control, or the right to control, the mode and manner of doing the work contracted for." *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (quoting *Councell v. Douglas*, 126 N.E.2d 597, 599 (Ohio 1955)). Further, the right of control or control retained over the agent is directed "toward the attainment of an objective" which the principal seeks. *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1469 (S.D. Ohio 1990) (citing *Hanson v. Kynast*, 494 N.E.2d 1091, 1094 (1986)). It is also well established that "[t]he principal's right of control need not extend to every aspect of the alleged principal and agent's association." *Id.*

Agency theories are also applicable to the franchisor/franchisee relationship. Under Ohio law, "a franchisor may be vicariously liable for a franchisee's tortious conduct under a theory of apparent agency." *Bricker v. R & A Pizza, Inc.*, 804 F. Supp.2d 615, 623 (S.D. Ohio 2011). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Plaintiff sufficiently details what aspects of the individual hotel locations Defendant Wyndham controls. As previously summarized, Plaintiff alleges an agency relationship was created between the individual hotels and franchisor Defendant through Defendant's control of brand quality standards; use and placement of franchisor's name; local hotel's reservation systems, brand loyalty programs, and websites; and employment policies and procedures. (ECF Nos. 1 ¶¶ 56–67; 48 at 14). The fact that Defendant is in a franchise relationship with the respective, local hotels does not bar application of agency theory. This Court, construing the facts in favor of Plaintiff, finds that these allegations sufficiently establish that Defendant's control over the local hotels is directed towards attaining more revenue and commercial success, which is the objective Defendant Wyndham, as principal, seeks. *See Gen Acquisition, Inc.*, 766 F. Supp. at 1469. This meets the definitions of agency liability under both federal and Ohio common law. Therefore, they are sufficient to meet the pleading standards of Rule 8.

Defendant Wyndham also argues that the Complaint lacks allegations sufficient to support a claim that their hotel franchisees violated the TVPRA, such that their actions can be imputed to Defendant as franchisor. (ECF No. 49 at 13 (citing *C.C. v. H.K. Group of Co., Inc.*, No. 1:21-cv-1345-TCB, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 20221) (dismissing TVPRA claim against

franchisee hotel operator because Plaintiff did not allege interaction between defendants and traffickers sufficient to establish a common undertaking)); ECF No. 30 at 20).

Notably, Defendant Wyndham is correct that for an agency theory of vicarious liability to apply to it, the hotel franchisees themselves must have committed a wrong to be imputed on Defendant. The three-pronged test established by 18 U.S.C. § 1595 and used by this Court to assess Defendant's direct liability is applicable to the hotel franchisees as well. First, A.R. alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1, ¶¶ 52, 117–18). Second, Plaintiff alleged sufficient facts to establish that staff at Wyndham's Super 8 and Hawthorn Suites had, at a minimum, constructive knowledge of trafficking, through a series of red flags such as requests for A.R.'s room by nonpaying guests, excessive requests for clean room supplies, cash payments for rooms, and that A.R.'s traffickers asked hotel staff to notify them when she left the hotel. (ECF No. 1, ¶¶ 47–49). Therefore, the second prong of the beneficiary theory is satisfied. Third, Plaintiff has alleged sufficient facts—that Wyndham's franchisee hotels, along with Defendant, benefited financially from renting rooms to traffickers and should have known trafficking was going on based on the totality of the circumstance—to meet § 1595's definition of participation in a venture in a commercial setting that profited from A.R.'s sex trafficking. (ECF No. 48 at 10–12).

### 2.   *Joint Employer Status*

Plaintiff alleges that under federal labor regulations, Defendant is "considered joint employer[] of the employees at [its] locations at which Plaintiff was trafficked." (ECF No. 1, ¶ 64). Defendant responds that the joint employer doctrine is an "employment law concept that has been invoked in the franchise context to give franchisee employees grounds for suing franchisors

21

under certain narrow circumstances." (ECF No. 30 at 17). It maintains that the "joint employer" doctrine, however, is not applicable here because it is "not a basis for imputing liability to third parties from a franchisee to a franchisor." (*Id.* (citing *Bricker*, 804 F. Supp. 2d at 621–22) (explaining that under the joint employer doctrine "an employee . . . may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.")). Regardless, Defendant argues Plaintiff lacks "well-pled" facts to even show Wyndham is a joint employer of the Super 8 and Hawthorn Suites staff. (*Id.* at 18).

Most courts have recognized that the employer control theory and the agency theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002); *see also Ries v. Ohio State Univ. Med. Ctr.*, 2013-Ohio-4545, ¶ 21, 137 Ohio St. 3d 151, 156, 998 N.E.2d 461, 466 (Ohio 2013) (explaining that when defining the scope of employment in a joint employment setting, the "concept generally denotes an agency relationship"). At the federal level, whether two employers are a joint employer often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace,

and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). The Ohio courts similarly weigh the following factors when determining whether an entity has sufficient control over another to be considered a joint employer: "(1) interrelations of operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership and financial control." *Wittenbrook v. Elecs. Recycling Servs., Inc.*, 2018-Ohio-208, ¶ 28, 104 N.E.3d 876, 882–83 (Ohio Ct. App. 7th 2018).

Plaintiff alleges on information and belief, that Defendant exercises "significant control over the employment decisions of [its] hotel locations," which includes promulgating "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay." (ECF No. 1, ¶¶ 61–62). Relevant here, Plaintiff maintains that Defendant "promulgate[s] policies relating to training employees to recognize and respond to human trafficking, and the Hotel Defendants determine whether or not such training shall be mandatory." (*Id.*, ¶ 65). These pleadings allege that Defendant had significant control over hotel franchisee employees because it set the standards by which the hotel employees are expected to operate on a daily basis. These allegations meet the requirements to plead joint employment under both federal and Ohio state common law because they demonstrate the Defendant's oversight and control was intimately interwoven with the procedures governing daily hotel operations and employment policies. Therefore, A.R. has pled sufficient facts particular to Wyndham to meet Rule 8 notice requirements for purposes of surviving this Motion to Dismiss.

### D.  Group Pleading

Defendant argues that the Complaint impermissibly "offers general allegations about 'consistent red flags' and adherence to 'a common policy of harboring known and suspected

human traffickers in exchange for financial benefit' without any attempt to tie any particular allegations to any particular hotel." (ECF No. 30 at 7). Federal Rule of Civil Procedure 8 requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp.*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The impermissibility or permissibility of "group pleading" is most common in cases alleging corporate fraud where it is more difficult for plaintiffs to meet the requirements set out in Federal Rule of Civil Procedure 9(b)—that is, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Within the fraud context, other courts have concluded that general pleadings are permissible even where there are multiple defendants so long as the "grouping" does not resemble a "monolith." *See City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1338–39 (citing *Fondren v. Schmidt*, 626 F. Supp. 892, 898 (D. Nev. 1986) (recognizing that in cases involving multiple defendants, a plaintiff should allege the role of each of them, but also noting that "group conduct may be pleaded" when "a category of defendants is allegedly responsible for a continuing course of conduct")).

Fraud carries a heightened pleading standard under Federal Rule of Civil Procedure 9(b) that is not applicable to Plaintiff's allegations because she does not plead fraud here. Our sister district's analysis of fraud-related group pleadings, however, is instructive in this case where the pleading burden is lower. Plaintiff initially brought the TVPRA claim against corporate hotel entities and associations claiming they were responsible for the continuation of A.R.'s trafficking in hotels they owned or were associated with in Columbus. (ECF No. 1, ¶ 115–19). A.R. alleges that not only was Defendant generally aware of ongoing trafficking in their hotels but also alleges

specific facts about signs of her own trafficking in the Columbus hotels that would have made Defendant constructively aware of her situation. (*Id.*, ¶¶ 44–49). Again, Plaintiff's allegations about incidents of abuse at Wyndham's Super 8 hotel are specific to that location. (*Id.*, ¶ 44). A.R. does not have to meet a heightened pleading standard, yet she does here. This Court is satisfied that Plaintiff sufficiently pled that all Defendants were responsible "for a continuing course of conduct," even though Defendant Wyndham is currently the only defendant remaining. *Fondren*, 626 F. Supp. at 898; (ECF Nos. 23, 42, 51). To the extent the allegations are attributable to prior defendants instead of Wyndham, that conclusion will become apparent through the discovery process. *City of Morristown*, 206 F. Supp. at 1339.

Further, Plaintiff does state allegations specific to at least one of Wyndham's hotels: employees at the Super 8 broke up a fight between A.R.'s trafficker and a "john" when she called them for help. (ECF No. 1, ¶ 44). Paragraph 47 alleges that at least one of "A.R.'s traffickers regularly requested that hotel staff notify him should A.R. attempt to leave the hotels' premises." (*Id.*, ¶ 47). Finally, Plaintiff asserts that Wyndham maintained "policies and procedures that they knew or should have known incentivized their employees to ignore obvious signs of human trafficking, and even rent rooms to known or suspected human traffickers, while they continued to profit from sex trafficking." (*Id.*, ¶ 54). While Plaintiff made some of these same allegations against the other defendants, this is not a situation where "[p]laintiff simply incorporated all of his previous allegations by reference, set forth a list of the defendants he intended to include in each count, and then pled a series of legal conclusions." *Ingris v. Borough of Caldwell*, No. 14-855 (ES), 2015 WL 3613499, at *8 (D.N.J. Jun. 9, 2015). Plaintiff named Wyndham in her Complaint and made allegations specific to its failure to prevent her sex trafficking. Therefore, A.R. has pled

sufficient facts particular to Wyndham to meet Rule 8 notice requirements for purposes of surviving this Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant Wyndham's Motion to Dismiss (ECF No. 30) is hereby **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: December 16, 2022**